UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

MARK A. EASON, JR., )
    Petitioner, )
)
v. ) CAUSE NO.: 3:24-CV-558-JVB-AZ
)
WARDEN, )
    Respondent. )

**OPINION AND ORDER**

Mark A. Eason, Jr., a prisoner without a lawyer, filed a habeas corpus petition under 28 U.S.C. § 2254 to challenge his conviction for dealing heroin and fentanyl under Case No. 20C01-1707-F2-21. Following a jury trial, on August 30, 2018, the Elkhart Circuit Court sentenced Eason to forty years of incarceration.

In deciding this habeas petition, the Court must presume the facts set forth by the state courts are correct unless they are rebutted with clear and convincing evidence. 28 U.S.C. § 2254(e)(1). The Court of Appeals of Indiana summarized the evidence presented at trial:

> In April 2017, a confidential cooperating source informed the Elkhart County Intelligence and Covert Enforcement Unit ("ICE") that Eason was dealing heroin in Elkhart County. The source helped ICE arrange a controlled buy from Eason on May 4, 2017. The buy was audio and video recorded. Eason gave an undercover officer, UC 150, a bag with brown powder in exchange for $1,900. The substance field tested positive for heroin.
>
> UC 150 arranged a second controlled buy with Eason on May 9, 2017 to purchase one ounce of heroin. This buy was also audio and video recorded. Eason informed UC 150 that the price for one ounce of heroin was $3,625 and accepted $3,650 from UC 150 because Eason believed the bag might be over an ounce.
>
> Nicole Kay ("Kay"), a forensic scientist with the Indiana State Police, conducted testing to identify the substances purchased on May 4 and 9, 2017. She conducted three tests on each substance: ultraviolet spectrometry, gas chromatography-mass spectrometry ("GCMS"), and thin layer chromatography. These tests are generally accepted and relied on in forensic science and are used throughout Indiana to determine the presence of drugs.

1

The substance from May 4, 2017 weighed 10.04 grams. The first test, ultraviolet spectrometry, was inconclusive. Kay testified that inconclusive ultraviolet spectrometry results commonly occur when a substance is a mixture and clarified that an inconclusive result does not mean a substance does not contain illegal substances. Kay then ran GCMS. The first run was weak, indicating but not confirming the presence of heroin. A second run was strong enough to confirm the presence of heroin. Finally, thin layer chromatography was positive for heroin. Kay testified the substance from the May 4, 2017 controlled buy contained heroin.

Kay followed the same process for the substance obtained during the May 9, 2017 controlled buy. The substance weighed 29.28 grams. The ultraviolet spectrometry test was again inconclusive, and the first run of GCMS was weak. The second run of GCMS was also faulty. Kay concentrated the substance and the third analysis positively confirmed the presence of fentanyl, a Schedule II controlled substance. Thin layer chromatography was also positive for fentanyl. Kay testified the substance from May 9, 2017 contained fentanyl.

The State charged Eason with Level 2 felony dealing in a controlled substance and Level 2 felony dealing in a narcotic drug. The State also alleged Eason is an habitual offender. At the April 16, 2018 bench trial, the trial court found Eason guilty of both counts, and Eason admitted to being an habitual offender. The court sentenced Eason to an aggregate 45-year sentence, with 5 years suspended to probation.

[DE 10-5] at 2-4; *Eason v. State*, 131 N.E.3d 190 (Ind. Ct. App. 2019).

On July 5, 2019, the Indiana Court of Appeals affirmed Eason's conviction on direct appeal. [DE 10-5]. On August 17, 2020, Eason submitted a petition for post-conviction relief, but, on August 24, the Elkhart Circuit Court refused to file it because Eason did not sign it. [DE 10-6]. The Elkhart Circuit Court advised that it would dismiss the petition with prejudice if Eason did not submit an amended petition within ten days. *Id.* On October 8, 2021, Eason submitted a successive petition for post-conviction relief to the Indiana Court of Appeals in an attempt to appeal the Elkhart Circuit Court's refusal to file his petition for post-conviction relief. *Id.* [DE 10-13]. On November 5, 2021, the Indiana Court of Appeals declined to grant him any relief. [DE 10-12].

On June 27, 2024, Eason initiated this habeas case by filing a petition.[1] [DE 1]. On July 10, 2024, the Court found that the petition contained both exhausted and unexhausted claims because his

---

[1] Here, the Court credits the attestation in the petition that Eason placed the petition in the prison mailbox on this date. [DE 1] at 5.

2

State post-conviction proceedings remained pending. [DE 4]. As a result, the Court ordered Eason to either file an amended petition omitting the unexhausted claims or to file motion to stay this habeas case pending resolution of State post-conviction proceedings. *Id.* Eason chose to file an amended petition omitting the unexhausted claims. [DE 6].

In the amended petition, Eason asserts that he is entitled to habeas relief due to his wrongful arrest and the improper bias of the trial court. These grounds are difficult to parse, and Eason may be nesting other grounds for relief within them. However, each of the underlying factual allegations pertain to events that occurred before direct appeal.

## TIMELINESS

The Warden argues that the petition is untimely. The statute of limitations for habeas corpus cases is set forth in 28 U.S.C. § 2244(d), which provides:

> (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of--
>
>> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>>
>> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>>
>> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>>
>> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

Based upon review of the record, the limitations period began to run in this case from the date on which the judgment became final pursuant to Section 2254(d)(1)(A). On July 5, 2019, the Indiana Court of Appeals affirmed the conviction on direct appeal. Eason declined to file petition to transfer, so the conviction became final on August 19, 2019. *See Gonzalez v. Thaler*, 565 U.S. 134, 150 (2012); Ind. R. App. 57(C) (petition for transfer must be filed within forty-five days).

349 days later, on August 17, 2020, Eason tendered a petition to initiate post-conviction proceedings, and the Warden further argues that this effort did not toll the limitations period because the petition was not a "properly filed application" under Section 2244(d)(2). Eason contends that his post-conviction petition was "properly filed" because it was properly signed and also contends that the Elkhart Circuit Court did not grant him enough time to amend it. The Seventh Circuit Court of Appeals has held that the "properly filed application" inquiry requires an objective approach:

> Whether a collateral attack is "properly filed" can be determined in a straightforward way by looking at how the state courts treated it. If they considered the claim on the merits, it was properly filed; if they dismissed it for procedural flaws such as untimeliness, then it was not properly filed. The objective approach not only facilitates decisionmaking but also gives the parties a clear benchmark. Everyone knows exactly when the federal petition is due. A subjective approach, however, would leave these essential questions unanswered until there had been substantial litigation, for there is no right answer to a question such as "how close to being 'properly filed' is close enough?".

*Freeman v. Page*, 208 F.3d 572, 576 (7th Cir. 2000). Here, the Elkhart Circuit Court rejected Eason's petition for post-conviction relief for filing. Applying the objective approach set forth in *Freeman*, the petition was not a "properly filed application" that tolled the federal limitations period.[2] Consequently, the limitations expired 17 days later on September 3, 2020. Eason's unsuccessful effort to pursue successive post-conviction relief in State court did not restart the federal limitations period,

---

[2] The Court observes some incongruity between its finding here that Eason never had a properly filed petition pending and its prior finding that his post-conviction proceedings remained pending. [DE 4] at 2. According to the State court docket and the Warden, the Elkhart Circuit Court never dismissed the post-conviction proceeding, and it remains pending. [DE 10] at 4; [DE 10-6]. Though this is a long time for a case with no valid pleadings to be pending, there is no evidence in the record to suggest that the case has been closed or dismissed.

nor did they "open a new window for federal collateral review." *De Jesus v. Acevedo*, 567 F.3d 941, 943 (7th Cir. 2009). Because Eason filed the habeas petition nearly than four years too late, the Court finds that the petition is untimely.

This result may seem harsh particularly if, as Eason suggests, the Elkhart Circuit Court incorrectly found that his petition for post-conviction relief was unsigned. However, this finding imposed no barrier preventing him from filing a habeas petition within the federal limitations period. In fact, he could have filed a federal habeas petition at the same time or even before he filed the State post-conviction petition. *See Pace v. DiGuglielmo*, 544 U.S. 408, 416 (2005). Further, while Eason may not have appreciated a timeliness issue until he received notice that the Elkhart Circuit Court refused his petition for filing, Eason took no action to direct the attention of the Elkhart Circuit Court to his signature. [DE 10-6, 10-7]. Eason also does not explain why he waited until the federal limitation period had nearly expired to pursue State post-conviction relief or why he waited an additional four years to file a federal habeas petition, which forecloses a finding that he is entitled to equitable tolling. *See Carpenter v. Douma*, 840 F.3d 867, 870 (7th Cir. 2016) ("Thus, to qualify for equitable tolling, [the petitioner] had to demonstrate that he was reasonably diligent in pursuing his rights throughout the limitations period and until he finally filed his untimely habeas petition."); *see also Spears v. City of Indianapolis*, 74 F.3d 153, 157 (7th Cir. 1996) ("When parties wait until the last minute to comply with a deadline, they are playing with fire."). Because the petition is untimely and because the circumstances do not warrant equitable tolling, the Court denies the habeas petition.

PROCEDURAL DEFAULT

The Warden also argues that Eason has procedurally defaulted his claims. Before considering the merits of a habeas petition, the Court must ensure that the petitioner has exhausted all available remedies in state court. 28 U.S.C. § 2254(b)(1)(A); *Lewis v. Sternes*, 390 F.3d 1019, 1025 (7th Cir. 2004). To avoid procedural default, a habeas petitioner must fully and fairly present his federal claims

to the state courts. *Boyko v. Parke*, 259 F.3d 781, 788 (7th Cir. 2001). Fair presentment "does not require a hypertechnical congruence between the claims made in the federal and state courts; it merely requires that the factual and legal substance remain the same." *Anderson v. Benik*, 471 F.3d 811, 814–15 (7th Cir. 2006) (citing *Boyko*, 259 F.3d at 788). It does, however, require "the petitioner to assert his federal claim through one complete round of state-court review, either on direct appeal of his conviction or in post-conviction proceedings." *Lewis*, 390 F.3d at 1025 (internal quotations and citations omitted). "This means that the petitioner must raise the issue at each and every level in the state court system, including levels at which review is discretionary rather than mandatory." *Id.* "A habeas petitioner who has exhausted his state court remedies without properly asserting his federal claim at each level of state court review has procedurally defaulted that claim." *Id.*

> Indiana courts have explained a convicted individual's State court remedies as follows:
>
> Postconviction procedures do not afford a petitioner with a super-appeal, and not all issues are available. Rather, subsequent collateral challenges to convictions must be based on grounds enumerated in the postconviction rules. If an issue was known and available, but not raised on direct appeal, it is waived. If it was raised on appeal, but decided adversely, it is res judicata. If not raised on direct appeal, a claim of ineffective assistance of trial counsel is properly presented in a postconviction proceeding. A claim of ineffective assistance of appellate counsel is also an appropriate issue for postconviction review. As a general rule, however, most free-standing claims of error are not available in a postconviction proceeding because of the doctrines of waiver and res judicata.

*Timberlake v. State*, 753 N.E.2d 591, 597–98 (Ind. 2001). Eason's claims substantailly rely on the probable cause affidavit and the events at pretrial hearings and trial. Consequently, Eason was required to raise his claims relating to his unlawful arrest and trial court error on direct appeal. He did not raise these claims before the Indiana Court of Appeals and did not petition for transfer to the Indiana Supreme Court. [DE 10-2, 10-3]. Therefore, the claims are procedurally defaulted, and he raises no apparent basis to excuse procedural default.

6

CERTIFICATE OF APPEALABILITY

Pursuant to Section 2254 Habeas Corpus Rule 11, the Court must consider whether to grant or deny a certificate of appealability. To obtain a certificate of appealability when the Court dismisses a petition on procedural grounds, the petitioner must show that reasonable jurists would find it debatable (1) whether the Court was correct in its procedural ruling and (2) whether the petition states a valid claim for denial of a constitutional right. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Here, there is no basis for finding that jurists of reason would debate the correctness of this procedural ruling, so there is no basis for encouraging Eason to proceed further in federal court.

For these reasons, the Court:

(1) **DENIES** the amended petition [DE 6] because the claims are untimely and procedurally defaulted;

(2) **DENIES** Mark A. Eason, Jr., a certificate of appealability pursuant to Section 2254 Habeas Corpus Rule 11; and

(3) **DIRECTS** the Clerk of the Court to close this case.

SO ORDERED on March 10, 2025.

s/ Joseph S. Van Bokkelen
JOSEPH S. VAN BOKKELEN, JUDGE
UNITED STATES DISTRICT COURT